UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

JOSEPH Di MARTINO and EUGENE B. SHANKS, Jr.,

                              Petitioners,                 4606 Civ. 2008

              - against -                            Judge Chin

MARGARET DOOLEY,

                              Respondent.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

# MEMORANDUM OF MARGARET DOOLEY, THE RESPONDENT, IN SUPPORT OF HER MOTION TO COMPEL ARBITRATION AND IN OPPOSITION TO THE PETITION TO STAY ARBITRATION

                                          GUY R. FAIRSTEIN
                                          Attorney for Margaret Dooley,
                                           the Respondent
                                          15 Stewart Place - No. 11-J
                                          White Plains, NY 10603
                                          914-328-0923

**Table of Contents**

| | Page |
|---|---|
| Table of Authorities | iii |
| Preliminary Statement | 1 |
|     Prior Proceedings | 1 |
|     Margaret Dooley's Employment | 2 |
|     Margaret Dooley's LTIP Units | 3 |
|     The LTIP Document | 4 |
|         The mediation/arbitration clause | 7 |
|         The partial limitation of fiduciary liability | 8 |
|         The choice-of-law clause | 9 |
| Argument | 9 |
| I.    The Court Has Federal Question Jurisdiction over This Proceeding | 9 |
|     A.    The Arbitration Provision Before the Court Is within the Convention | 9 |
|     B.    The Proceeding Is Within the Court's Jurisdiction upon Removal | 11 |
| II.    Di Martino and Shanks Bound Themselves to Arbitrate the Claims Asserted Against Them, Including All Issues of Arbitrability | 12 |
|     A.    The Broad Arbitration Clause Remits All Claims and Disputes Under the LTIP, Including Arbitrability, to the Arbitrator | 12 |
|     B.    The Federal Arbitration Act Remits All Claims and Disputes Under the LTIP, Including Arbitrability, to the Arbitrator | 12 |
|     C.    The Supreme Court, during its Current Term, Has Twice Acknowledged that Parties May, by an Arbitration Clause Provide that Arbitrability Shall Be Decided by the Arbitrator | 15 |

D.   The Choice-of-Law Clause Does
Not Take the Determination of
Arbitrability from the Arbitrator . . . . . . . . . . . . . . . . . . . . . . .     17

III.   Di Martino and Shanks Present Only
Issues of LTIP Document Interpretation
and Defenses to Arbitrability, All of
which Shall Be Determined by the Arbitrator . . . . . . . . . . . . . . . . . . . . . . .     18

A.   Margaret as Signatory . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .     19

B.   Shanks as Non-Signatory . . . . . . . . . . . . . . . . . . . . . . . . . . . . .     19

C.   Personal Liability . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .     20

D.   Individual or Representative Capacity . . . . . . . . . . . . . . . . . . . .     21

E.   After-the-Fact Protestations . . . . . . . . . . . . . . . . . . . . . . . . . . .     23

F.   The Mediation Condition Precedent . . . . . . . . . . . . . . . . . . . . . .     23

Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .     24

## Table of Authorities

## Cases

**Page**

AT&T Techs., Inc. v. Communications Workers of America,
    475 U.S. 643, 651 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .     15

Bergesen v. Joseph Muller Corp.,
    710 F.2d 928, 933 (2d Cir. 1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . .     10

Borsack v. Chalk and Vermilion Fine Arts, Ltd.,
    974 F.Supp. 293, 298 (S.D.N.Y. 1997) . . . . . . . . . . . . . . . . . . . . . . . .     10,11

Cargill Int'l S.A. v. M/T Pavel Dybenko,
    991 F.2d 1012, 1018 (2d Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . .     10

Cement & Concrete Workers Dist. Council Welfare Fund v. Lollo,
    35 F.3d 29 (2d Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .     21-23

Contec Corp. v. Remote Solution Co.,
    398 F.3d 205, 208 (2d Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . .     13-14, 19

Denney v. BDO Seidman, LLP,
    412 F.3d 58, 69 (2d Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .     13, 19-20

Freeford Ltd. v. Pendleton,
    2008 N.Y. App.Div. LEXIS 3085 (1st Dep't, April 10, 2008) . . . . . . .     20

Garrity v. Lyle Stuart, Inc.,
    40 N.Y.2d 354 (1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .     18

Hall Street Associates, L.L.C. v. Mattel, Inc.,
    552 U.S. ___, 128 S.Ct.1396, 170 L.Ed.2d 254  (2008) . . . . . . . . . . .     15

Mastrobuono v. Shearson Lehman Hutton,
    514 U.S. 52 (1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .     17-18, 24

Mencher v. Weiss,
    306 N.Y. 1, 4 (1953) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .     21, 22

Millicom Int'l V N.V. v. Motorola, Inc.,
    2002 U.S. Dist. Lexis 5131, at 25-26 (S.D.N.Y. 2002) . . . . . . . . . . . .     23

Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.,
    473 U.S. 614, 627 (1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .     13, 18

Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.,
    460 U.S. 1, 24-25 (1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    13, 18

Preston v. Ferrer,
    552 U.S. ___, 128 S.Ct. 978, 169 L.Ed.2d 917 (2008) . . . . . . . . . . . .    15-17, 18

Progressive Casualty Ins. Co. v. C.A. Reaseguradora Nacional de
Venezuela,    24
    991 F.2d 42, 47-48 (2d Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . .

Thomson-CSF, S.A. v. American Arbitration Association,
    64 F.3d 773, 776-77 (2d Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . .    20

## Statutes (Federal)

9 U.S.C. § 2 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    13

9 U.S.C. §§ 201, et seq. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    2 n.2, 9

9 U.S.C. § 202 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    2 n.2

9 U.S.C. § 203 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    11

9 U.S.C. § 205 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    11

9 U.S.C. § 206 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    11

9 U.S.C. § 208 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    12-13

Labor Management Relations Act . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    14-15

## Treaties

Convention on the Enforcement of Foreign Arbitral Awards . . . . . . . . . . . .    9

## Statutes (New York State)

CPLR Article 75    18

CPLR 7503(c)    2, 2 n.2

## Arbitration Rules

AAA Commercial Arbitration Rule R-4 (a)(ii) . . . . . . . . . . . . . . . . . . . . . . .    2 n.2

AAA Commercial Arbitration Rule R-7(a) . . . . . . . . . . . . . . . . . . . . . . . . .    12, 14

AAA Commercial Arbitration Rule R-7(b) . . . . . . . . . . . . . . . . . . . . . . . . .    17

AAA Commercial Arbitration Rule R-29 . . . . . . . . . . . . . . . . . . . . . . . . . . .    2 n.2

AAA Commercial Arbitration Rule R-39 . . . . . . . . . . . . . . . . . . . . . . . . . . .    2 n.2

NASD Code of Arbitration Procedure . . . . . . . . . . . . . . . . . . . . . . . . . . . .    18

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

JOSEPH Di MARTINO and EUGENE B. SHANKS, Jr.,

                                Petitioners,                    4606 Civ. 2008

            - against -                                         Judge Chin

MARGARET DOOLEY,

                                Respondent.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x


### MEMORANDUM OF MARGARET DOOLEY, IN SUPPORT OF HER MOTION TO COMPEL ARBITRATION AND IN OPPOSITION TO THE PETITION TO STAY ARBITRATION

Margaret Dooley ("Margaret") submits this memorandum in support of her

motion, pursuant to 9 U.S.C. § 206, to compel arbitration, and in opposition to the petition of

Joseph Di Martino ("Di Martino") and Eugene B. Shanks, Jr. ("Shanks") to stay arbitration.

### Preliminary Statement

**Prior Proceedings**.    The predicate mediation failed to bring about a settlement

of Margaret's claims for her vested benefits under the Performance Unit Plan (the "LTIP"), an

unfunded long-term incentive plan adopted in 1997 (the "LTIP Document") by the members of

the Advisory Board for the LTIP.  On April 28, 2008, Margaret filed a demand for arbitration

(the "Demand") with the American Arbitration Association (the "AAA").  She named as

arbitration-respondents her former employer (which was known at the inception of her

employment as CDC IXIS Capital Markets North America, Inc, and which later became known

1

as Natixis Capital Markets, Inc., both of which entities are referred to as "Natixis"), and the members of the LTIP's Advisory Board, Anthony Orsatelli ("Orsatelli"), Joseph Di Martino ("Di Martino") and Eugene B. Shanks, Jr. ("Shanks").

On May 13, 2008, Di Martino and Shanks petitioned the Supreme Court of the State of New York, County of New York, to stay arbitration. Neither Natixis nor Orsatelli joined in the petition. Di Martino and Shanks state that "Natixis is not seeking to stay the arbitration as to it" (Stay Mem., at 1 n.1),[1] and that Margaret "failed to properly serve" the Demand upon Orsatelli under CPLR 7503(c).[2] On May 19, 2008, prior to the return date of the petition, Margaret removed the stay proceeding to this Court by filing a notice of removal under 9 U.S.C. § 205. She has moved, under 9 U.S.C. § 206, to compel arbitration.

**Margaret's Employment**.    Margaret became employed by Natixis, pursuant to an agreement in writing dated May 5, 2003. Her position was Head of Natixis's Structured Transaction Group; her officer title was Managing Director (Dooley Aff.,[3] Exhibit A, at p. 1). Her employment terms included her participation in the LTIP (id., at ¶ 3 and Exhibit A thereto).

---

[1] References to "Stay Mem." are to the supporting memorandum of law of Di Martino and Shanks, dated May 13, 2008.

[2] Stay Mem., at 3., n.3. The Demand states (at ¶ 1) that Margaret demanded arbitration under 9 U.S.C. § 201, et seq. Given this foundation in federal law, Margaret did not commence the arbitration by "service" under CPLR 7503(c). Rather, Margaret used the procedure which the Advisory Board members incorporated in the LTIP Document. Per AAA Commercial Arbitration Rule R-4 (a)(ii), Margaret filed two copies of the Demand with the AAA and "g[a]ve to [each respondent] written notice of [her] intention to arbitrate." She did not then have Orsatelli's residence address; she gave him notice by sending a copy of the Demand, by Federal Express, to him in care of Christian Lehir, an attorney in-house at Orsatelli's then current or former employer in Paris, the parent Natixis entity, under cover of a letter requesting that Mr. Lehir forward the Demand to Orsatelli. In addition, on June 5, 2008, a copy of the demand was delivered to Orsatelli by Federal Express at an address in Paris believed to be his residence address. See AAA Commercial Arbitration Rule 39. Margaret will submit to the arbitrator, under AAA Commercial Rule 29, the issue whether this was "due notice" to Orsatelli.

[3] References to "Dooley Aff." are to the affidavit of Margaret Dooley sworn to on June 6, 2008.

Natixis terminated Margaret's employment effective May 17, 2007, without cause.

**Margaret's LTIP units**.    Margaret's incentive compensation included two awards of LTIP units.  In May 2005, she was awarded LTIP units relating to the Performance Period June 1, 2004, to December 31, 2004, having a face value of $635,000.00 (Dooley Aff., Exhibit B).   In May 2006, she was awarded LTIP units relating to the Performance Period January 1, 2005, to December 31, 2005, having a face value of $490,000.00 (Dooley Aff., Exhibit C).  These units vested at December 31, 2004, and December 31, 2005, respectively, and became payable as soon thereafter as was practicable.

Margaret's vested LTIP units had, in the third quarter of 2006 (i.e., after they had vested and should have been paid), a "time value" in excess of $1,250,000.00 (Dooley Aff., Exhibit D).   However, by the time Margaret received the distribution of her LTIP awards in February 2008, the financial performance of Natixis had deteriorated substantially (Demand, Rubin Affirm.,[4] Exhibit B, at ¶ 46(A)(i)).  Although the Advisory Board Charter calls upon the "North American" Board members to "provide objectivity to the participants in the plan" (Di Martino Aff.,[5] Exhibit A, at ¶ 2(a)), at the time of this financial distress the Advisory Board members accommodated Natixis by determining the value of Margaret's units favorably to Natixis and prejudicially to Margaret.

The Advisory Board members disregarded the special compensation arrangement Natixis had granted Margaret (Dooley Aff., ¶ 7), including shortened one-year performance periods and consequent full vesting of her LTIP units (id., ¶ 12).  Instead, they applied three-year

---

[4]  References to "Rubin Affirm." are to the affirmation of Howard J. Rubin, dated May 13, 2008.

[5]  References to "Di Martino Aff." are to the affidavit of Joseph Di Martino sworn to on May 13, 2006.

vesting, deeming one-third of Margaret's 2004 award and two-thirds of her 2005 award to have been forfeited upon the termination of her employment (id.).  In February 2008 they distributed to Margaret only $571,215.97, before withholdings (id., ¶ 13).

Even then, the Advisory Board members withheld from Margaret notice of this LTIP distribution.  She learned of it from another terminated employee, who told her that he had received his distribution.  At the time, the Advisory Board members were negotiating with Margaret, through their or their delegatee's agent, terms of settlement by which they insisted that Margaret would forfeit the entire settlement amount, including the payment for her LTIP units as calculated favorably to Natixis, in the event of her breach of the settlement agreement, however small the actual damages, if any, Natixis were to have sustained by reason of such breach.  Margaret refused to agree to this forfeiture, and proceeded to arbitration.

**The LTIP Document**.        The mediation/arbitration provision is in the LTIP Document (Di Martino Aff., Exhibit B, at ¶ 6(h)).  The LTIP Document is uncommon in contrast with its counterparts in the case literature, and perhaps sui generis.  It is not a bilateral agreement, notwithstanding that Di Martino and Shanks treat it as such.  Rather it is a plan document, adopted, and later restated, on a unilateral basis, by the Advisory Board members, who are its only signatories.

Both the LTIP Document and a restated LTIP document (Dooley Aff., Exhibit G) are now also before the Court.  Neither version was signed on behalf of Natixis; neither was signed by Margaret or any other LTIP participant.  Nonetheless, Di Martino and Shanks state that Natixis and Margaret are "parties" to the LTIP Document, and, indeed, that it "... is an agreement only between Natixis and LTIP participants, including [Margaret]" (Petition, ¶ 19; see also Di

4

Martino Aff., ¶ 6, and Shanks Aff.,[6] ¶ 6) (italics supplied).

Di Martino and Shanks go further.  Although both versions of the LTIP document were unilaterally adopted by the Advisory Board members, and signed only by them, Di Martino and Shanks declare that they are not parties thereto.  Their bizarre assertions are calculated - - an effort to force the square pegged LTIP Document into the round hole of the cases involving bilateral agreements which Di Martino and Shanks have cited in support of their stay petition.

Clarity of analysis is frustrated by these attempts to cast the LTIP Document as an "agreement" and to identify its "parties."  Instead, the proper focus is directed by 9 U.S.C. ¶ 202: the "legal relationship" arising under the LTIP Document.  Section 202 refers to "[a]n arbitration agreement or arbitral award arising out of a legal relationship, whether contractual or not ...."  The LTIP Document is not a bilateral agreement, not contractual in that sense; it is a unilateral plan which created legal relationships, including the duty to arbitrate "any claim or and dispute arising out  of or relating to the plan, or the breach thereof."

Application of this analysis shows that both Di Martino and Shanks are bound by the LTIP Document, including its arbitration provision:

- - (a) Di Martino is one of the four Advisory Board members who adopted and signed the LTIP Document;

- - (b) Shanks operated as an Advisory Board member under the LTIP Document for more than seven years, evidently under a consulting contract which incorporated or by which he assumed duties under the LTIP Document (Di Martino Aff., Exhibit A, at ¶ 6: "The North American Representatives may be asked to enter into confidentiality agreements in connection

---

[6]  References to"Shanks Aff." are to the affidavit of Eugene B. Shanks, Jr., sworn to on May 13, 2008.

with their consulting contracts");

- - (c) Di Martino and Shanks are two of the three Advisory Board members who adopted and signed the restated LTIP document.

The consulting contracts of Di Martino and Shanks surely address their duties under the LTIP Document and afford them benefits for their service thereunder. However, as they have scrambled for distance from the LTIP Document, neither Di Martino nor Shanks mustered the candor to submit to the Court, or even to refer to, their consulting contracts.

The LTIP Document refutes the contention of Di Martino and Shanks that they are not "parties" to it. It defines the scope of their authority as plan fiduciaries, and also the scope of their permitted delegations of functions (Di Martino Aff., Exhibit B, at ¶¶ 3(a) and (b). It specifies the limitation of their personal liability, and thus the extent to which they may be adjudicated personally liable for their acts (id., ¶ 3(c)). It prescribes as well the commensurately limited indemnity to which they are entitled (id.).

Do Di Martino and Shanks have sufficient belief in their argument that they are not bound by the LTIP Document, or non-interested therein, that they will acknowledge to the Court the absence of any limitation on their personal liability as LTIP fiduciaries, should arbitration be compelled, and surrender their right to limited indemnity? It is unlikely they believe in their argument to that degree.

The LTIP Document authorizes Advisory Board members to select employees for grants of LTIP units (id., ¶ 5(a)), to specify the number of units to be granted and the performance periods to which such units relate (id.), and to adjust the value of units (id., ¶ 5(b)). It authorizes them at any time to terminate, amend, modify or suspend the plan (id., ¶ 6(g)).

6

Despite the assertion of each of Di Martino and Shanks that he did not "receive any direct benefits by virtue of the terms of the LTIP document" (Di Martino Aff., ¶ 6; Shanks Aff., ¶ 7), neither of them denies having received benefits, for his service as an Advisory Board member, by virtue of the terms of other, related documents, such as the consulting contract under which each of them serves (Di Martino Aff., Exhibit A, at ¶ 6).

Di Martino and Shanks thus have rights under, and are bound by, various provisions of the LTIP Documents. They may not pick and choose among the provisions of the LTIP document, taking those they like and rejecting others. They must take it as a whole.

The submissions of Di Martino and Shanks draw particular attention to three clauses in the LTIP Document: (1) the mediation/arbitration clause; (2) the clause by which Advisory Board members carved out for themselves only a partial limitation of their personal liability, and a right of indemnity limited commensurately; and (3) the choice-of-law clause.

**The mediation/arbitration clause.** The mediation/arbitration clause states (Di Martino Aff., Exhibit B, ¶ 6(h)):

**6.    General Provisions.**

\*        \*        \*

(h)    Arbitration Clause.    In the event there is any claim or dispute arising out of or relating to this Plan, or the breach thereof, and the Company and the Plan participants shall not have resolved such claim or dispute within 90 days after written notice from one party to the other setting forth the nature of such claim or dispute, then such claim or dispute shall attempt to be settled by mediation through a mediator agreed upon by the parties for nonbinding, confidential mediation. If this is not successful, the dispute will be submitted to binding arbitration in New York, New York, in accordance with the Commercial Arbitration Rules of the American Arbitration Association by an

7

arbitrator(s) selected according to such Rules. Judgment upon the
award rendered by such arbitrator(s) shall be entered in any Court
having jurisdiction thereof upon the application of either party.

As predicates to arbitration, "the Company and the Plan participants" were
required to attempt to settle "any claim or dispute arising out of or relating to this Plan, or the
breach thereof," initially directly, and thereafter through a mediator. In unilaterally writing
this clause into the LTIP Document, the Advisory Board members excluded themselves from this
settlement process; they restricted the participants to, as here, Margaret and Natixis.

The arbitration provision is not participant-restricted in that way; it is a very broad
one, requiring the arbitration of "any claim or dispute arising out of or relating to this Plan, or
the breach thereof." This breadth requires that Margaret arbitrate her LTIP-related claims
against Natixis, as well as those against the Advisory Board members.

Further, in unilaterally writing this clause into the LTIP Document, the Advisory
Board members specified arbitration before the AAA, under the AAA's Commercial Arbitration
Rules. Their incorporation of the AAA's Commercial Arbitration Rules is crucial here in
binding them to arbitrate, including as to arbitrability issues (see Point II below).

**The partial limitation of fiduciary liability**.        In adopting the LTIP
Document, the Advisory Board members afforded themselves only a limited exculpation from
personal liability (Di Martino Aff., Exhibit B, ¶ 3(c); Dooley Aff., Exhibit G, ¶ 3(c)):

> (c)    Limitation of Liability.        ... Neither a member
> of the [Advisory] Board nor any person acting as a delegatee of the
> Board hereunder shall be personally liable for any action,
> determination, or interpretation taken or made in good faith with
> respect to the Plan, and each such person shall, to the extent
> permitted by law, be fully indemnified and protected by the
> Company with respect to any such action, determination or

interpretation.

Advisory Board members remain, in the words they unilaterally wrote into the LTIP Document, "personally liable for any action, determination, or interpretation taken or made" by them other than in good faith.  Margaret predicates the personal liability of the Advisory Board arbitration-respondents upon the assertion that they acted in regard to her vested LTIP units other than in good faith (Demand, Rubin Affirm., Exhibit B, at ¶ 47).

       **The choice-of-law clause**.    The LTIP Document states that it "shall be governed by, and construed in accordance with the laws of the State of New York" and, if any provision therein "shall be held invalid or unenforceable, its remaining provisions ... shall continue to be fully effective" (Di Martino Aff., Exhibit B, at ¶ 6(f)).

## ARGUMENT

### I

### THE COURT HAS FEDERAL QUESTION JURISDICTION OVER THIS PROCEEDING

Margaret's Demand asserts that her arbitration claims arise under the LTIP Document and Chapter 2 of the Federal Arbitration Act, 9 U.S.C. §§ 201, et seq. (Demand, Rubin Affirm., Exhibit B, at ¶ 1).  The resolution of two issues will establish the Court's jurisdiction over this proceeding: (1) whether the arbitration provision before the Court falls under the Convention on the Enforcement of Foreign Arbitral Awards (the "Convention"); and (2) whether the proceeding is within the Court's jurisdiction upon removal.

**A.**    **The Arbitration Provision Before the Court Falls under the Convention**

Arbitration provisions falling under the Convention are defined in 9 U.S.C. § 202:

> An arbitration agreement or arbitral award arising out of a legal relationship, whether contractual or not, which is considered as commercial, including a transaction, contract, or agreement described in section 2 of this title, falls under the Convention. An agreement or award arising out of such a relationship which is entirely between citizens of the United States shall be deemed not to fall under the Convention unless that relationship involves property located abroad, envisages performance or enforcement abroad, or has some other reasonable relation with one or more foreign states. For the purpose of this section a corporation is a citizen of the United States if it is incorporated or has its principal place of business in the United States.

To fall under the Convention, an arbitration provision must: (1) arise out of a legal relationship, which is (2) commercial in nature, and (3) not entirely domestic in scope. <u>Cargill Int'l S.A. v. M/T Pavel Dybenko</u>, 991 F.2d 1012, 1018 (2d Cir. 1993); <u>Borsack v. Chalk and Vermilion Fine Arts, Ltd.</u>, 974 F.Supp. 293, 298 (S.D.N.Y. 1997). The Convention covers awards rendered in the United States. <u>Bergesen v. Joseph Muller Corp.</u>, 710 F.2d 928, 933 (2d Cir. 1983).

The LTIP Document satisfies the three <u>Cargill</u> criteria. It establishes a legal relationship, as it sets forth terms governing one form of incentive compensation for officers of Natixis, including rights and obligations applicable to the LTIP fiduciaries, Natixis and the participants in the LTIP, as well as the process for adjudicating claims and disputes thereunder.

The LTIP Document is commercial in nature. The Advisory Board decreed at least twice that any dispute thereunder be arbitrated in accordance with the AAA's *Commercial Arbitration Rules*. The LTIP's stated purpose highlights its commercial nature:

> ... to assist [the Company] ... in attracting, retaining, motivating and rewarding employees and whose performance can impact the long term success of the Company by providing competitive compensation opportunities that reward outstanding performance.

The business of Natixis is commercial; the LTIP's purpose is to enhance that business.

Natixis's principal place of business is New York (Stay Mem., at 1), by reason of which it is deemed a citizen of the United States. 9 U.S.C. § 202. Margaret is a citizen of the UK; other LTIP participants are citizens of France (Philippe Kieffer) and Denmark (Kristine Jansen), both resident in the United Kingdom; and Orsatelli is a citizen of France. (Demand, Rubin Affirm., Exhibit B, at ¶¶ 3, 5(A), 10.) The LTIP is not entirely domestic in scope.

The LTIP Document falls under the Convention.

**B.     The Proceeding Is Within the
        Court's Jurisdiction upon Removal**

The proceeding was removed to this Court, from the Supreme Court of the State of New York, County of New York, under 9 U.S.C. § 205, which states, in part:

> Where the subject matter of an action or proceeding pending in a State court relates to an arbitration agreement or award falling under the Convention, the defendant or the defendants may, at any time before the trial thereof, remove such action or proceeding to the district court of the United States for the district and division embracing the place where the action or proceeding is pending ....

The subject matter of the proceeding certainly "relates to an arbitration agreement ... falling under the Convention," as Di Martino and Shanks seek to stay the arbitration as to them.

9 U.S.C. § 203 contains the statutory grant of jurisdiction:

> An action or proceeding falling under the Convention shall be deemed to arise under the laws and treaties of the United States. The district courts of the United States (including the courts enumerated in section 460 of title 28) shall have original jurisdiction over such an action or proceeding, regardless of the amount in controversy.

The Court has original federal question jurisdiction over the proceeding, regardless of the amount in controversy.   Borsack v. Chalk and Vermilion Fine Arts, Ltd., 974 F.Supp. at 298.

11

## II

## Di MARTINO AND SHANKS BOUND THEMSELVES TO ARBITRATE THE LTIP CLAIMS ASSERTED AGAINST THEM, INCLUDING ALL ISSUES OF ARBITRABILITY

**A.     The Broad Arbitration Clause Remits
        All Claims and Disputes Under the LTIP,
        Including Arbitrability, to the Arbitrator**

The Advisory Board members included a broad arbitration clause when they

adopted the LTIP Document (Di Martino Aff., Exhibit C, ¶ 5(c)):

> ... [if] any claim or dispute arising out of or relating to this Plan, or
> the breach thereof, ... [is not settled by nonbinding confidential
> mediation], the dispute will be submitted to binding arbitration in
> New York, New York, in accordance with the Commercial
> Arbitration Rules of the American Arbitration Association by an
> arbitrator(s) selected according to such Rules.

In incorporating the AAA's Commercial Arbitration Rules, they included its Rule R-7(a), which

grants to the arbitrator the power to rule on his or her own jurisdiction, that is, on arbitrability:

> R-7. Jurisdiction        (a) The arbitrator shall have the power to rule
> on his or her own jurisdiction, including any objections with respect
> to the existence, scope or validity of the arbitration agreement.

http://www.adr.org/sp.asp?id=22440#M-2 .

The Advisory Board members are bound, by the provision they unilaterally

adopted, to arbitrate "any claim or dispute arising out of or relating to this Plan, or the breach

thereof...," including, under AAA Commercial Arbitration Rule 7(a), any issue of arbitrability.

**B.     The Federal Arbitration Act Remits All
        Claims and Disputes Under the LTIP,
        Including Arbitrability, to the Arbitrator**

Under 9 USC § 208, Chapter 1 of Title 9, the Federal Arbitration Act ("FAA"),

applies here:

> Chapter 1 applies to actions and proceedings brought under this
> chapter to the extent that chapter is not in conflict with this chapter
> or the Convention as ratified by the United States.

The FAA manifests a Congressional policy which "requires courts liberally to

construe the scope of arbitration agreements ...." Mitsubishi Motors Corp. v. Soler Chrysler-

Plymouth, Inc., 473 U.S. 614, 627 (1985). The effect of Section 2 of the FAA, 9 U.S.C. § 2,

"is to create a body of federal substantive law of arbitrability, applicable to any arbitration

agreement within the coverage of the Act ...." Id., at 626.

> [Q]uestions of arbitrability must be addressed with a
> healthy regard for the federal policy favoring arbitration .... The
> [Federal] Arbitration Act establishes that, as a matter of federal
> law, any doubts concerning the scope of arbitrable issues should be
> resolved in favor of arbitration, whether the problem at hand is the
> construction of the contract language itself or a ... defense to
> arbitrability.

Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24-25 (1983); Mitsubishi

Motors, supra, 473 U.S. at 626.

> Further, when, as here, the arbitration provision is a broad one...

> ... a presumption of arbitrability attaches such that "arbitration of
> even a collateral matter will be ordered if the claim alleged
> implicates issues of contractual construction or the parties' rights
> and obligations under it." (internal quotation marks and citations
> omitted)

Denney v. BDO Seidman, LLP, 412 F.3d 58, 69 (2d Cir. 2005).

> In Contec Corp. v. Remote Solution Co., 398 F.3d 205, 208 (2d Cir. 2005), the

Second Circuit recognized that ...

> ... [u]nder the FAA, there is a general presumption that the issue of

13

> arbitrability should be decided by the courts ... Acknowledging
> this presumption, we have held that "the issue of arbitrability may
> only be referred to the arbitrator if there is <u>clear and unmistakable
> evidence</u> from the arbitration agreement, as construed by the
> relevant state law, that the parties intended that the question of
> arbitrability shall be decided by the arbitrator."

The Second Circuit identified the incorporation of the AAA's Commercial Arbitration Rules as

a way in which the manifestation of such "clear and unmistakable evidence" will occur (<u>id</u>.):

> ... when, as here, parties explicitly incorporate rules that empower
> an arbitrator to decide issues of arbitrability, the incorporation
> serves as clear and unmistakable evidence of the parties' intent to
> delegate such issues to the arbitrator ....

The arbitration clause in <u>Contec</u> provided for arbitration "... in accordance with the Commercial

Arbitration Rules of the [AAA]" (<u>id</u>.).  The court observed:

> Rule 7 of the AAA Commercial Arbitration Rules states
> with respect to jurisdiction that 'the arbitrator shall have the power
> to rule on his or her own jurisdiction, including any objections with
> respect to the existence, scope or validity of the arbitral
> agreement.'  AAA Rule 7(a).

Here, as in <u>Contec</u>, the LTIP Document's arbitration provision incorporates the

AAA's Commercial Arbitration Rules.  The Advisory Board did not do this by mistake or

inadvertence, as it again unilaterally incorporated the AAA's Commercial Rules when, in 2006,

it adopted the restated LTIP Document containing an identical arbitration provision.

By incorporating AAA Commercial Rule 7(a) into the LTIP document, the

Advisory Board members remitted all questions of arbitrability to the arbitrator.

The issue of arbitrability under collective bargaining agreements implicates a

federal policy different than that which governs arbitrability under the FAA.  Thus, the Labor

Management Relations Act cases which Di Martino and Shanks cite are irrelevant here.

Under the LMRA, arbitrability is to be decided by the court. The question whether, in a collective bargaining agreement, the parties "clearly and unmistakably" agreed that arbitrability would be decided by an arbitrator, is not a part of the analysis. The reason was set forth by the Supreme Court in <u>AT&T Techs., Inc. v. Communications Workers of America</u>, 475 U.S. 643, 651 (1986), a case with Di Martino and Shanks cite (Stay Mem., at 7):

> The willingness of parties to enter into agreements that provide for arbitration of specified disputes would be "drastically reduced," however, if a labor arbitrator had the "power to determine his own jurisdiction ...." Were this the applicable rule, ... [the] result undercuts the longstanding federal policy of promoting industrial harmony through the use of collective bargaining agreements, and is antithetical to the function of a collective bargaining agreement as setting out the rights and duties to the parties. (citation omitted)

The FAA, not the LMRA, governs here. The FAA obliges courts to enforce an arbitration provision such as that here, which remits issues of arbitrability to the arbitrator.

## C. The Supreme Court, during its Current Term, Has Twice Acknowledged that Parties May, by an Arbitration Clause, Provide that <u>Arbitrability Shall Be Decided by the Arbitrator</u>

The Supreme Court, in its current term, has twice addressed the question whether, under the FAA, it is for a court or the arbitrator to decide the issue of arbitrability.

In <u>Hall Street Associates, L.L.C. v. Mattel, Inc.</u>, 552 U.S. ___, 128 S.Ct. 1396, 170 L.Ed.2d 254 (2008), the Supreme Court acknowledged the right of parties, under the FAA, to specify the issues which are to be arbitrated:

> ... [T]he FAA lets the parties tailor some, even many features of arbitration by contract, including ... which issues are arbitrable ...."

In <u>Preston v. Ferrer</u>, 552 U.S. ___ , 128 S.Ct. 978, 169 L.Ed.2d 917 (2008), the

Supreme Court held, under the FAA, that the question of arbitrability is for the arbitrator when, as here, the arbitration provision incorporates an AAA rule so providing.

Preston commenced an arbitration to recover management fees under his agreement with TV "Judge Alex" Ferrer. The agreement provided for the arbitration of "any dispute ... relating to the terms of [the contract] or the breach, validity, or legality thereof . . . in accordance with the rules [of the AAA]." Ferrer, in his turn, petitioned the California Labor Commissioner, alleging the invalidity and unenforceability of the parties' entire agreement under California's Talent Agencies Act.

Ferrer also sued in the Los Angeles Superior Court, seeking a declaration that the parties' dispute was not subject to arbitration. Lacking a jurisdictional basis for removal, Preston moved to compel arbitration. The Superior Court denied Preston's motion and enjoined him from proceeding before the arbitrator "unless and until the Labor Commissioner determines that . . . she is without jurisdiction over the disputes between Preston and Ferrer." The California Court of Appeal affirmed the judgment of the Superior Court, and the California Supreme Court denied Preston's petition for review. 128 S.Ct at 982-83; 169 L.Ed.2d at 924.

The Supreme Court granted cert and identified the "dispositive issue" as "who decides whether Preston acted as personal manager or as talent agent," the California Labor Commissioner or an arbitrator. The Supreme Court held the issue one for the arbitrator:

> ... When parties agree to arbitrate all questions arising under a
> contract, the FAA supersedes state laws lodging primary
> jurisdiction in another forum, whether judicial or administrative.
>
>          \*       \*       \*
>
> ... [ T]he arbitration clause speaks to the matter in controversy; it

16

states that "any dispute . . . relating to . . . the breach, validity, or legality" of the contract should be arbitrated in accordance with the American Arbitration Association (AAA) rules ....  Both parties are bound by the arbitration agreement; the question of Preston's status as a talent agent relates to the validity or legality of the contract ....

\*        \*        \*

Preston and Ferrer's contract, as noted, provides for arbitration in accordance with the AAA rules ....  One of those rules states that "[t]he arbitrator shall have the power to determine the existence or validity of a contract of which an arbitration clause forms a part." AAA, Commercial Arbitration Rules PR–7(b) (2007) .... (citations omitted)

128 S.Ct. at 983, 988, 989; 169 L.Ed.2d at 928, 930, 931.

Under these Supreme Court decisions, the issues of arbitrability presented by

Di Martino and Shanks are for the arbitrator to determine, not for the Court.

## D.    The Choice-of-Law Clause Does Not Take the Determination of Arbitrability from the Arbitrator

The Supreme Court has addressed harmonizing the potential clash between

an arbitration clause and a choice-of-law provision.  In <u>Mastrobuono v. Shearson Lehman</u>

<u>Hutton</u>, 514 U.S. 52, 63-64 (1995), the Court did so by reading ...

... "the laws of the State of New York" to encompass substantive principles that New York Courts would apply, but not to include special rules limiting the authority of arbitrators.  Thus, the choice-of-law provision covers the rights and duties of the parties, while the arbitration clause covers arbitration; neither sentence intrudes upon the other.

The arbitration provision at issue in <u>Mastrobuono</u> called for arbitration in

accordance with NASD rules.  The NASD Code of Arbitration Procedure granted arbitrators the

power to award "damages and other relief," which the Court determined to be "broad enough at

17

least to contemplate" punitive damages as a remedy. Id., at 60-61. The Court excluded, as a "special rule limiting the authority of arbitrators," application of the rule of decision in Garrity v. Lyle Stuart, Inc., 40 N.Y.2d 354, 355 (1976), in which the New York Court of Appeals had held that private arbitrators lack the power to award punitive damages.

In Preston, supra, the Supreme Court again harmonized a choice-of-law clause with an arbitration provision, and did so in the same way, "[f]ollowing the guide *Mastrobuono* provides ...." 128 S.Ct. at 989; 169 L.Ed.2d at 931.

Here, arbitrability should be decided under the FAA and the "federal substantive law of arbitration," not under CPLR Article 75, or any other provisions of New York statutory or decisional law which "limit the authority of arbitrators." The LTIP Document's choice-of-law clause is not a basis upon which arbitration may be stayed.

### III

### Di MARTINO AND SHANKS PRESENT ONLY ISSUES OF LTIP DOCUMENT INTERPRETATION AND DEFENSES TO ARBITRABILITY, ALL OF WHICH SHALL BE DETERMINED BY THE ARBITRATOR

As stated above, at 14, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or a ... defense to arbitrability." Moses H. Cone Mem. Hosp., supra, 460 U.S. at 24-25; Mitsubishi Motors, supra, 473 U.S. at 626.

DiMartino and Shanks advance several arguments upon which they seek to stay arbitration by reason of the "construction of contract language" and "defenses to arbitrability:" (a) whether Shanks, a non-signatory to the LTIP Document, is bound to arbitrate thereunder;

18

(b) whether Shanks and Di Martino may be personally liable under the LTIP Document; (c) whether Di Martino signed the LTIP Document in an individual or representative capacity; (d) whether Di Martino and Shanks intended to become personally liable thereunder; and (e) whether Margaret failed to perform a condition precedent to her arbitration against Di Martino and Shanks by not having involved them in the predicate mediation.

For the reasons discussed in Point II, the resolution of each of these issues is for the arbitrator. In any case, each of these arguments lacks merit.

## A.    **Margaret as Signatory**

Although Margaret is not a signatory to the LTIP Document, Di Martino and Shanks concede her capacity to arbitrate thereunder; they refer to her as a "party" thereto. This obviates need for the Court to decide the issue addressed by the Second Circuit in <u>Contec</u>, <u>supra</u>, 398 F.3d at 209: "... whether a non-signatory can compel a signatory to arbitrate under an agreement where the question of arbitrability is itself subject to arbitration."

## B.    **Shanks as Non-Signatory**

Shanks goes on at some length to make the point that arbitration is a creature of agreement and that he did not sign the LTIP Document. Stay Mem., at 4-5, 7-8, 10. This is unavailing, as the Second Circuit emphatically declared in <u>Denney</u>, <u>supra</u>, in the course of directing that arbitration proceed against non-signatories to the agreements there at issue:

> ... it is *not* the case that "an obligation to arbitrate attaches only to one who has personally signed the written arbitration provision" ....

412 F.3d at 71 (italics in the original).

Rather, upon a showing of "any of the five circumstances ... under which a non-

signatory may be compelled to arbitrate a claim with a signatory to an agreement containing an arbitration clause," arbitration will be compelled. Id. These five circumstances are (1) incorporation by reference, (2) assumption, (3) agency, (4) veil-piercing/alter-ego, and (5) estoppel. Id.; see also Thomson-CSF, S.A. v. American Arbitration Association, 64 F.3d 773, 776-77 (2d Cir. 1995). Any one of these will compel Shanks to arbitrate Margaret's claims. New York law addresses the non-signatory issue using a similar analysis. Freeford Ltd. v. Pendleton, 2008 N.Y. App.Div. LEXIS 3085, at 12-17 (1st Dep't, April 10, 2008).

Estoppel will bind Shanks to arbitrate if he: (1) received the LTIP Document (as he must have in or about June 1998, when he joined the Advisory Board); (2) made no objection to it (as he surely did not, given his adoption of the restated LTIP in 2006 on virtually unchanged terms); and (3) knowingly exploited it (as he surely did from 1998 to 2006 by serving on the Advisory Board thereunder in consideration of the benefits under his consulting contract). Thomson-CSF, supra, 64 F.3d at 778-79. Shanks is estopped to deny his obligation to arbitrate.

Incorporation by reference will bind Shanks to arbitrate if the LTIP Document were incorporated into a document which he adopted, such as his consulting contract. Id., at 777.

Assumption will bind Shanks to arbitrate if his conduct subsequent to joining the Advisory Board evinced an assumption of obligations under the LTIP document, including the obligation to arbitrate. Id. Again, his consulting contract likely meets this test. Also, in signing the restated LTIP document he adopted an identical arbitration provision.

## C.    Personal Liability

Di Martino and Shanks protest that "the LTIP Agreement does not even have a personal liability clause" (Stay Mem., at 12). Their protest is incorrect. The personal liability

20

clause is set forth in full text at p. 8-9, above.  Indeed, Di Martino and Shanks quote it in the sentence immediately following their denial of its existence.  By this clause Advisory Board members prescribed the parameters of both their exculpation from, and their vulnerability to, personal liability.

Clearly, in adopting the LTIP Document, and in restating it with the identical clause in place, the Advisory Board members limited, but did not extinguish, the risk that they would incur personal liability. Whether an interpretation of the limitation of liability clause, or a defense to arbitrability, the issue of personal liability is to be decide by the arbitrator.

**D.    Individual or Representative Capacity.**

Di Martino and Shanks contend that they signed the LTIP Document not in an individual but a representative capacity, and as agents for a disclosed principal.  Again, whether an interpretation of the LTIP, or a defense to arbitrability, this issue is for the arbitrator.

The consulting contracts which Di Martino and Shanks enjoy by reason of their service as "North American representatives" on the Advisory Board will likely bear heavily upon the resolution of this individual vs representative capacity issue.  The arbitrator may, in the exercise of discretion, order disclosure of the consulting contracts.  This is further reason to remit this defense to arbitrability to the arbitrator.  In any case, the contention is without merit.

The contention is an attempt by Di Martino and Shanks to find safe harbor within the rule of Mencher v. Weiss, 306 N.Y. 1, 4 (1953), which requires "clear and explicit evidence of the agent's intention to substitute or superadd his personal liability for, or to, that of his principal," and within the "Lollo factors" for determining in certain circumstances the personal liability of agents, see Cement & Concrete Workers Dist. Council Welfare Fund v.

21

Lollo, 35 F.3d 29 (2d Cir. 1994). This safe harbor is not available here.

First, in adopting the limitation of liability clause in the LTIP Document, the Advisory Board members exculpated themselves from *personal liability* to only the limited degree discussed above, and held themselves vulnerable to *personal liability* beyond the perimeter of that limited exculpation. They did so unilaterally, not after negotiation with plan participants, the persons who benefit from the liability limitation. They did so as sophisticated businessmen who were recruited to the Advisory Board "based on their knowledge of US capital markets and expertise in diversified US financial institutions" (Di Martino Aff., Exhibit A, ¶ 3). They did so with clear reference to themselves as the Board members. They did so above their personal signatures. Their careful delineation of the liability/non-liability perimeter, taken against this background, is clear and convincing evidence sufficient to satisfy the Mencher v. Weiss test.

Second, there is no basis in the LTIP Document upon which to infer that the Advisory Board is either a juridical entity distinct from the individuals who serve on it, or a principal as to which they stand as agents. The individual Board members are the principals, not agents. They signed the LTIP Document in an individual, not a representative capacity.

Third, the underpinning for the application of the "Lollo factors" is absent here. Unlike Lollo, where the exonerated corporate officers were neither named in nor signatories to the negotiated, bilateral, 35-page collective bargaining agreement, Di Martino adopted and signed and Shanks surely assumed by his consulting agreement the unilateral six-page LTIP Document, which both signed in 2006 when it was restated. Further, the personal liability clause in the LTIP Document was one they unilaterally set forth, distinguishing it from the personal liability clause in Lollo, which the Second Circuit characterized as "... attempt[ing] to foist

22

personal liability for Lollo, Inc.'s obligations on any 'employee of the company," a generalization' which makes the validity of the clause suspect."  Here, the Advisory Board members explicitly cast themselves at risk of personal liability for their conduct as Board members done other than in good faith.  The arbitrator may or may not find personal liability; he or she will not find the personal liability clause of suspect validity.

## E.    <u>After-the-Fact Protestations.</u>

Di Martino and Shanks protest that they signed the LTIP Document only as Advisory Board members, and did not intend to become personally bound by the terms of the LTIP Document.  After-the-fact protestations such as these are an irrelevancy here.

> Because the scope of authority granted to the arbitrators is determined by the parties' contract or submissions, subsequent statements by one of the parties do not affect the powers of the arbitrators.

<u>Millicom Int'l V N.V. v. Motorola, Inc.</u>, 2002 U.S. Dist. Lexis 5131, at 25-26 (S.D.N.Y. 2002).

## F.    <u>The Mediation Condition Precedent.</u>

Di Martino and Shanks contend that Margaret breached a condition precedent to arbitrating against them by not having made them parties to the mediation with Natixis. Whether a matter of interpretation, or a defense to arbitrability, this issue is for the Arbitrator.

The issue lacks merit.  Margaret complied strictly with the LTIP Document, by which the Advisory Board members excluded themselves from the pre-arbitration settlement processes, including mediation, when they restricted participation in the pre-arbitration settlement processes to "the Company and the Plan participants" (see ¶ 6(h), quoted at pp. 7-8, above).  By contrast, the Advisory Board members adopted a broad arbitration clause by which

they required the arbitration of "any claim or dispute arising out of or relating to this Plan, or the breach thereof" (id.). This broad clause requires the arbitration of participants' claims against Advisory Board members.

The distinction between "restricted" and "broad" provisions such as these is recognized in the federal law of arbitrability. See Progressive Casualty Ins. Co. v. C.A. Reaseguradora Nacional de Venezuela, 991 F.2d 42, 47-48 (2d Cir. 1993):

> ... we have held that "an arbitration agreement restricted to the immediate parties does not bind a non-party, notwithstanding words of incorporation in a separate contract by which that non-party is bound ....
>
> On the other hand, we have held that a broadly-worded arbitration clause which is not restricted to the immediate parties may be effectively incorporated by reference into another agreement .... (citations omitted)

It would be entirely appropriate for the arbitrator to interpret the mediation/arbitration clause as party-restrictive as to mediation yet party-inclusive as to arbitration.

In any case, if the Court should consider the clause ambiguous, that would further support giving the issue to the arbitrator. Ambiguity is to be applied against the interest of the Advisory Board members who created it: "Respondents drafted an ambiguous document, and they cannot now claim the benefit from the doubt." Mastrobuono, 514 U.S. at 63.

## CONCLUSION

Upon the facts and documents before the Court, and for the reasons set forth herein, Margaret Dooley submits that an order should issue granting her motion, pursuant to 9 U.S.C. § 206, to compel Joseph Di Martino and Eugene B. Shanks, Jr., to arbitrate her claims against them, and denying their petition to stay arbitration.

24

Dated: June 6, 2008

Guy R. Fairstein (GF - 1721)
Attorney for Margaret Dooley, the Respondent
15 Stewart Place - No. 11-J
White Plains, NY 10603
914-328-0923

25

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

JOSEPH Di MARTINO and EUGENE B. SHANKS, Jr.,

                            Petitioners,                 4606 Civ. 2008

            - against -

                                                  Judge Chin

MARGARET DOOLEY,

                            Respondent.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## AFFIRMATION OF SERVICE

        I, GUY R. FAIRSTEIN, an attorney-at-law duly admitted to practice law in the

State of New York, affirm under the penalty of perjury that:

        1.      I am the attorney representing Margaret Dooley, the respondent.

        2.      On June 7, 2008, I delivered to Federal Express, for delivery on Monday,

June 9, 2008, to Howard J. Rubin, of Davis & Gilbert LLP, the petitioners' attorneys, at 1740

Broadway, New York, NY 10019, a sealed envelope in a Federal Express mailer containing a

copy of the memorandum of Margaret Dooley in support of her motion to compel arbitration and

in opposition to the petition of Joseph Di Martino and Eugene B. Shanks, Jr., to stay arbitration.

Dated: June 7, 2008

                                      _____

                                    Guy R. Fairstein  (GF - 1721)
                                    Attorney for the Respondent
                                    15 Stewart Place  -  No. 11-J
                                    White Plains, NY 10603
                                    914-328-0923