UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------x

JOSEPH Di MARTINO and EUGENE B. SHANKS, Jr.,

                              Petitioners,            4606 Civ 2008

         - against -                               Judge Chin

MARGARET DOOLEY,

                              Respondent.

------------------------------------------x

# REPLY MEMORANDUM OF MARGARET DOOLEY
# IN FURTHER SUPPORT
# OF HER MOTION TO COMPEL ARBITRATION

                                              GUY R. FAIRSTEIN
                                              Attorney for Margaret Dooley,
                                                the Respondent
                                              15 Stewart Place - No. 11-J
                                              White Plains, NY 10603
                                              914-328-0923

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

JOSEPH Di MARTINO and EUGENE B. SHANKS, Jr.,

                              Petitioners,                  4606 Civ 2008

          - against -                                                   Judge Chin

MARGARET DOOLEY,

                              Respondent.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**REPLY MEMORANDUM OF MARGARET DOOLEY
IN FURTHER SUPPORT
OF HER MOTION TO COMPEL ARBITRATION**

                                                        GUY R. FAIRSTEIN
                                                        Attorney for Margaret Dooley,
                                                          the Respondent
                                                        15 Stewart Place - No. 11-J
                                                        White Plains, NY 10603
                                                        914-328-0923

## Table of Contents

                                                                                                           **Page**

| | | |
|---|---|---:|
| Table of Authorities | | ii |
| Preliminary Statement | | 1 |
| Argument | | 1 |
| It Is for the Arbitrator, Not This Court, to Determine Whether Di Martino and Shanks Must Arbitrate Margaret's Claims | | 1 |
| | A. The Petitioners' Interpretation of the Arbitration Provision Is Without Merit | 1 |
| | B. The Court's Role Is a Limited One | 4 |
| | C. The Petitioners' Rule R-7(a) Cases Are Distinguishable | 5 |
| | D. 9 U.S.C. § 4 Does Not Avail the Petitioners | 7 |
| | E. Shanks's Non-Signatory Cases Are Distinguishable | 7 |
| | F. The Condition Precedent Defense Is for the Arbitrator | 10 |
| Conclusion | | 10 |

# Table of Authorities

## Cases

|  | Page |
|---|---|
| Alliance Bernstein Investment Research & Management, Inc. v. Schaffran, 445 F.3d 121 (2d Cir. 2006) | 4, 6, 9 |
| Bar-Ayal v. Time Warner Cable Inc., 2006 U.S.Dist. LEXIS 75972 (S.D.N.Y. 2006) | 5 n.5 |
| Barrack, Rodos & Bacine v. Ballon Stoll Bader & Nadler, P.C., 2008 U.S.Dist. LEXIS 22026 (S.D.N.Y. 2008) | 6-7 |
| Bensadoun v. Jobe-Riat, 316 F.3d 171 (2d Cir. 2003) | 9 |
| Biondi v. Beekman Hill House Apt Corp., 94 N.Y.2d 659, 709 N.Y.S.2d 861 (2000) | 3 n.3 |
| Cap Gemini Ernst & Young, U.S., L.L.C. v. Nackel, 346 F.3d 360 (2d Cir. 2003) (per curiam), vacating and remanding 2002 U.S.Dist. LEXIS 22390, on remand, 2004 U.S.Dist LEXIS 4492 (S.D.N.Y.), judgment reinstated and aff'd, 2004 U.S.App. LEXIS (2d Cir. 2004) | 5-6 |
| Contec Corp. v. Remote Solution Co., 398 F.3d 205 (2d Cir. 2005) | 4, 6 |
| Doctor's Associates, Inc. v. Casarotto, 517 U.S. 681, 687 (1996) | 5-6 |
| First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938 (1995), aff'g 9 F.3d 1503 (3d Cir. 1994) | 2, 9 |
| Fraternity Fund Ltd. v. Beacon Hill Asset Management LLC, 371 F.Supp.2d 571 (S.D.N.Y. 2005) | 5 n.5 |
| Howsam v. Dean Witter Reynolds, Inc., 537 U.S. 79, 84-85 (2002) | 10 |
| JSC Surgutneftegaz v. President and Fellows of Harvard College, 2005 U.S.Dist LEXIS 15991 (S.D.N.Y. 2005) | 5 n.5 |
| Limonium Maritime, S.A. v. Mizushima Marinera, 1999 U.S.Dist Lexis 20010 (S.D.N.Y. 1999) | 9-10 |

Local 205, Cmty and Soc. Agency Employees' Union, Dist. Council 1707
AFSCME, AFL-CIO v. Day Care Council of New York, Inc.,
    992 F.Supp 338 (SDNY 1998) ................................. 9

Maisel v. McDougal Littell,
    2006 U.S.Dist. LEXIS 32501 (S.D.N.Y. 2006) ................. 5 n.5

MarketAxess Holdings, Inc. v. Ziegelbaum,
    17 Misc.3d 647, 843 N.Y.S.2d 817 (Sup.Ct, N.Y.Cty 2007) ........ 5 n.5

Mastrobuono v. Shearson Lehman Hutton, Inc.,
    514 U.S. 52 (1995) ......................................... 2, 3

Matter of Smith Barney Shearson, Inc. v. Sacharow,
    91 N.Y.2d 39, 666 N.Y.S.2d 990 (1997) ....................... 5

Monisoff v. Am. Eagle Invs, Inc.,
    927 F.Supp 137 (S.D.N.Y.), aff'd, 1996 U.S. App. LEXIS 31865
    (2d Cir 1996) .............................................. 9

Nichols v. Washington Mutual Bank,
    2007 U.S.Dist. LEXIS 85936 (E.D.N.Y. 2007) .................. 5-6

Sarhank Group v. Oracle Corp.,
    404 F.3d 657 (2d Cir. 2005) ................................. 8

Telenor East Invest AS v. Altimo Holdings & Invs. Ltd,
    2008 U.S.Dist LEXIS 23458 (S.D.N.Y. 2008) ................... 8

Telenor Mobile Communications v. Storm LLC,
    524 F.Supp.2d 332 (S.D.N.Y. 2007) ........................... 4-5

Town of Amherst v. Custom Lighting Services, LLC,
    2007 U.S. Dist. LEXIS 88296 (W.D.N.Y. 2007) ................. 10

**Statutes (Federal)**

9 U.S.C. Chapter 2 ............................................. 6

9 U.S.C. § 2 ................................................... 5, 6

9 U.S.C. § 4 ................................................... 6, 7

9 U.S.C. § 206 ................................................. 6, 7

9 U.S.C. § 208 ................................................. 6, 7

Labor Management Relations Act ................................. 8

### **Arbitration Rules**

AAA Commercial Arbitration Rule R-7(a) ........................  2, 4, 5, 6, 7, 9

NASD Code .......................................................  4, 5, 9

### **Uniform Laws**

Revised Uniform Arbitration Act of 2000, § 6(c), and comment 2,
    7 U.L.A. 12-13 (Supp. 2002)                                               10

## REPLY MEMORANDUM OF MARGARET DOOLEY IN FURTHER SUPPORT OF HER MOTION TO COMPEL ARBITRATION

Margaret Dooley ("Margaret") submits this reply memorandum in further support of her motion, pursuant to 9 U.S.C. § 206, to compel the petitioners, Joseph Di Martino ("Di Martino") and Eugene B. Shanks, Jr. ("Shanks"), to arbitrate her claims against them.[1]

### Preliminary Statement

The parties disagree concerning (a) the interpretation of the arbitration clause in the LTIP Document, and (b) the scope of the Court's role in determining arbitrability.

Margaret submits that the arbitration clause is broad, and unambiguous in its requirement that Di Martino and Shanks arbitrate her claims against them. She further submits that the role of the Court is a limited one: to examine the arbitration provision to determine whether, by "clear and unmistakable evidence," the decision as to arbitrability is to be made by the arbitrator, and, if so, to compel arbitration, including as to arbitrability.

### ARGUMENT

### IT IS FOR THE ARBITRATOR, NOT THIS COURT, TO DETERMINE WHETHER Di MARTINO AND SHANKS MUST ARBITRATE MARGARET'S CLAIMS

A.   **The Petitioners' Interpretation of the Arbitration Provision Is Without Merit**

The arbitration provision requires that "any claim or dispute arising out of or relating to this Plan, or the breach thereof ..." be arbitrated. This broad provision is sufficient on its face to encompasses Margaret's claims against the Advisory Board members.

---

[1] Defined terms used in Margaret's memorandum, dated June 6, 2008 ("Dooley Main Mem.") are used in this reply memorandum without restatement of the definition.

1

The question "who - - court or arbitrator - - has the primary authority to decide whether a party has agreed to arbitrate can make a critical difference to a party resisting arbitration." First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 942 (1995). Di Martino and Shanks prove this point by the lengths to which they go to avoid arbitration.

Di Martino and Shanks had protested that "the LTIP Agreement does not even have a personal liability clause" (Stay Mem., at 12). They now admit that they are subject to personal liability under the LTIP Document: "... Petitioners are only personally liable under the LTIP Document for actions they did not take in good faith ..." (Reply Mem., at 4).[2] Their argument that they are not required to arbitrate Margaret's claims is an argument that the "any claim or dispute... relating to" language does not means what it says, but instead means "any claim or dispute relating to this Plan except one asserted against Advisory Board members ...."

For Di Martino and Shanks, the arbitration provision does not mean what it says through incorporated Rule R-7(a), which gives the arbitrator "... the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement" - - the issue which they ask the Court to decide (Reply Mem., at 2, 9).

With these arguments, Di Martino and Shanks violate the rules of contract interpretation they espouse: that full meaning and effect should be given to all provisions of the LTIP Document, and that this should be done according to its plain language, Reply Mem., at 12, 14-15; Mastrobuono v. Shearson Lehman Hutton, Inc., 514 U.S. 52, 61 (1995).

Their arguments frustrate the goals of arbitration, "streamlined proceedings and expeditious results" (Reply Mem., at 24). They threaten proceedings in multiple forums, and

---

[2] References to "Reply Mem., are to the Petitioners' memorandum, dated June 20, 2008.

different outcomes against different Advisory Board members for identical conduct. If Margaret's claims are not arbitrable against all Advisory Board members, she could proceed in court against those not bound to arbitrate. See Mastrobuono, 514 U.S. 52, 61 n.7 (1995):[3]

> [I]t would seem sensible to interpret the 'all disputes' and 'any remedy or relief' phrases to indicate, at a minimum, an intention to resolve through arbitration any dispute that would otherwise be settled in a court, and to allow the chosen dispute resolvers to award the same varieties and forms of damages or relief as a court would be empowered to award.

Under the Di Martino/Shanks interpretation, the arbitration provision is at best ambiguous. Crediting it would impermissibly inflict upon Margaret an unfair result, and benefit those who unilaterally adopted the ambiguous language. Mastrobuono, 514 U.S. at 62:

> Respondents drafted an ambiguous document, and they cannot now claim the benefit of the doubt. The reason for this rule is to protect the party who did not choose the language from an unintended or unfair result.

This rule should also govern the omission of reference in Shanks's consulting agreement to the LTIP Document, given Margaret's lack of any role in its preparation.

Finally, it is irrelevant that counsel did not have contact with the Petitioners during the mediation (Rubin Decl., ¶ 4).[4] The LTIP Document authorizes Advisory Board members to act through delegatees (Di Martino Aff., Exhibit B at ¶ 3(b)); Margaret's Demand alleges that they did so (Rubin Affirm., Exhibit B, ¶¶ 40, 46(B)); and counsel does not deny that the persons with whom he dealt were acting as delegatees (Rubin Decl.).

---

[3] Margaret seeks punitive damages against the Advisory Board members, who may not be indemnified against liability for acts committed in bad faith. Biondi v. Beekman Hill House Apt. Corp., 94 N.Y.2d 659, 664, 709 N.Y.S.2d 861, 863 (2000). Thus, her claim against them is not duplicative of her claim against Natixis.

[4] References to "Rubin Decl." are to the declaration of Howard J. Rubin, dated June 19, 2008.

**B.      The Court's Role Is a Limited One**

In Alliance Bernstein Investment Research & Management, Inc. v. Schaffran, 445 F.3d 121 (2d Cir. 2006), the Second Circuit contrasted the NASD Code's arbitration rule with AAA Rule R-7(a) with regard to arbitrability, stating as to Rule R-7(a) (445 F.3d at 126):

> ... unlike the AAA rules in Contec, the [NASD] Code does not clearly and unmistakably provide for *all* issues of arbitrability to be arbitrated (italics supplied).

\*     \*     \*

> In *Contec*, ... the parties' agreement incorporated the commercial arbitration rules of the American Arbitration Association (the "AAA"). 398 F.3d at 207-08. The AAA rules provided that "the arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement." Id. at 208 (quoting AAA Rule R-7(a)). We held that when "parties explicitly incorporate rules that empower an arbitrator to decide issues of arbitrability, the incorporation serves as clear and unmistakable evidence of the parties' intent to delegate such issues to an arbitrator." Id. (italics in the original)

A court's inquiry upon a motion to compel arbitration is thus to determine "if there is *clear and unmistakable evidence* from the arbitration agreement, as construed by the relevant state law, that the parties intended that the question of arbitrability be decided by the arbitrator[s] (italics in the original)." Alliance Bernstein, 445 F.3d at 126, quoting Contec.

The incorporation of Rule R-7(a) in an arbitration provision satisfies the "clear and unmistakable" standard; the court's inquiry ends; and the court must grant the motion to compel arbitration. Alliance Bernstein, 445 F.3d at 126; Contec, 398 F.3d at 208; Telenor Mobile Communications v. Storm LLC, 524 F.Supp.2d 332, 351 (S.D.N.Y. 2007) ("... the AAA

4

rules provide arbitrators with general, unrestricted authority to 'rule on [their] jurisdiction,' see AAA Rule R-7(a)"); Matter of Smith Barney Shearson, Inc. v. Sacharow, 91 N.Y.2d 39, 47, 666 N.Y.S.2d 990, 994 (1997) (applying the standard and compelling arbitration).[5]

## C. The Petitioners' Rule R-7(a) Cases Are Distinguishable

Di Martino and Shanks prove Margaret's statement correct that the LTIP Document is sui generis in the arbitrability (Dooley Main Mem., at 4). They do not cite any arbitrability decision concerning a unilaterally adopted plan. Rather, they dismiss the unilateral nature of the LTIP Document as relevant only if it were Margaret resisting arbitration (Reply Mem., at 5 n.3). This is incorrect. The unilateral nature of the LTIP Document is one basis to distinguish their two Rule R-7(a) cases involving mutually signed, bilateral contracts.

In Cap Gemini Ernst & Young, U.S., L.L.C. v. Nackel, 346 F.3d 360 (2d Cir. 2003) (per curiam), and Nichols v. Washington Mutual Bank, 2007 U.S. Dist. LEXIS 85936 (E.D.N.Y. 2007), the arbitration provision was in a bilateral agreement and the party resisting arbitration challenged the provision itself as illegal (unconscionability in both, and in Nichols, also illegality under General Business Law § 339-c). The courts first determined legality, and then compelled arbitration, applying the "clear and unmistakable" standard.

These courts appear to have decided that "generally applicable contract defenses, such as ... unconscionability, may be applied to invalidate arbitration agreements without contravening [FAA] § 2." Doctor's Associates, Inc. v. Casarotto, 517 U.S. 681, 687 (1996).

---

[5] See also Bar-Ayal v. Time Warner Cable Inc., 2006 U.S.Dist. LEXIS 75972, at 30-32, 63 (S.D.N.Y. 2006); Maisel v. McDougal Littell, 2006 U.S.Dist. LEXIS 32501, at 6, 7 (S.D.N.Y. 2006); Fraternity Fund Ltd. v. Beacon Hill Asset Management LLC, 371 F.Supp.2d 571, 577 (S.D.N.Y. 2005); JSC Surgutneftegaz v. President and Fellows of Harvard College, 2005 U.S.Dist LEXIS 15991, 17-19 (S.D.N.Y. 2005); MarketAxess Holdings, Inc. v. Ziegelbaum, 17 Misc.3d 647, 653, 843 N.Y.S.2d 817, 820-21 (Sup.Ct, N.Y.Cty 2007) ("I am not permitted to exercise discretion in determining whether to refer an issue to arbitration.").

Cap Gemini and Nichols are distinguishable, on the facts and on the law.

On the facts, Di Martino and Shanks could not seek to invalidate the LTIP Document or its arbitration provision. As Advisory Board members, Di Martino adopted it, and Shanks operated under it for more than seven years, without objection to the arbitration clause; they and Orsatelli unilaterally adopted the restated LTIP document, which contains identical arbitration and personal liability clauses (Reply Mem., at 16 n.9).

On the law, Doctor's Associates was not a case under 9 U.S.C. Chapter 2; and it did not address the "clear and unmistakable" standard. Also, none of Doctor's Associates, or Cap Gemini or Nichols addressed the interplay between the "clear and unmistakable" standard and the rule of decision that under 9 U.S.C. § 2 challenges to the legality of an arbitration clause are for the court. See Margaret's Point I.D below, demonstrating that under 9 U.S.C. § 208, § 206 overrides § 2, and the incorporated Rule R-7(a) gives arbitrability to the arbitrator.

In the other Rule R-7(a) case cited, Barrack, Rodos & Bacine v. Ballon Stoll Bader & Nadler, P.C., 2008 U.S.Dist. LEXIS 22026 (S.D.N.Y. 2008), the contract in question, which the Barrack firm had not signed, provided for arbitration "in accordance with the Rules of the American Arbitration Association" (id., at 2), without mention of the Commercial Rules. The court determined, without mention of Rule R-7(a), or Contec, or Alliance Bernstein that "... there is not 'clear and unmistakable evidence' that [the Barrack firm] agreed to have the arbitrator determine arbitrability." The presumption that arbitrability is for the courts was not overcome on the particular facts of that case, evidently because the two self-represented law firm parties to the arbitrability dispute had failed to brief Rule R-7(a).

The Advisory Board members unilaterally incorporated Rule R-7(a) into the

6

original and restated LTIP documents. They thereby evinced the "clear and unmistakable" intent that arbitrability be determined by the arbitrator. None of their cases overcomes this.

D.     <u>9 U.S.C. § 4 Does Not Avail the Petitioners</u>

Di Martino and Shanks argue that 9 U.S.C. § 4 requires the Court to determine arbitrability. Reply Mem., at 7-8. This argument lacks merit, as § 4 conflicts with § 206, and, under § 208, is therefore overridden by § 206.

Section 4 states: "If the making of the arbitration agreement ... be in issue, the court shall proceed summarily to the trial thereof." By contrast, § 206 states: "A court having jurisdiction under this chapter may direct that arbitration be held in accordance with the agreement at any place therein provided for ...." When, as here, Rule R-7(a) is incorporated in the arbitration provision, the "in accordance with the agreement" language signifies that arbitrability shall be decided by the arbitrator "in accordance with" Rule R-7(a).

Under § 208, "Chapter 1 [§ 4] applies to actions and proceedings brought under this chapter [2] to the extent that chapter is not in conflict with this chapter ...." Section 4 is, in this respect, in conflict with § 206. Section 206 therefore governs, and requires, under the LTIP Document's incorporation of Rule R-7(a), that arbitrability be decided by the arbitrator.

E.     <u>Shanks's Non-Signatory Cases Are Distinguishable</u>

Shanks operated as an Advisory Board member under the LTIP Document for more than seven years. Under the Charter, he "administer[ed]" the LTIP (Di Martino Aff, Exhibit A, at ¶ 2(a)), and was to "provide objectivity to the participants" (id.). The Charter refers to the LTIP and Advisory Board members' "consulting contracts" (id., ¶¶ 2(a), 6). Under his consulting contract, Shanks received the Charter and the promise of at least $45,000.00 per year

7

.

for his Advisory Board service (Laier Reply Aff, Exhibit A). Prior to the date on which the Advisory Board members determined in bad faith the number and value of Margaret's vested LTIP units, the restated LTIP document had been adopted over signatures of Shanks, Di Martino and Orsatelli. The LTIP, Charter and consulting agreement are tightly interrelated; Shanks's signature on the consulting agreement binds him to the Charter and the LTIP Document. These compelling facts set Shanks apart from the non-signatories in the cases he has cited.

In Sarhank Group v. Oracle Corp., 404 F.3d 657 (2d Cir. 2005), the Second Circuit *did not* decide arbitrability or rule that it was to be decided by a court. Arbitration had been held in Egypt, not under AAA rules. Oracle had not signed an arbitration agreement with Sarhank (id., at 662). The Egyptian arbitrator had determined arbitrability, and made an award against Oracle. "[T]he district court held that it did not need to determine whether Oracle consented to arbitrate" (id., at 661); the Second Circuit concluded that "[o]n the present record, there is no "clear and unmistakable evidence' that Oracle submitted the issue of arbitrability to the arbitrators" (id., at 662). It remanded, for the district court to decide that issue (id., at 662-63). The Second Circuit instructed that a non-signatory could show the requisite intent in cases of "incorporation, by reference, assumption, vail piercing/alter ego and estoppel *and the like*" (italics supplied), the "and the like" phrase seeming to enlarge beyond the enumerated concepts the bases for binding a non-signatory to arbitrate.

In Telenor East Invest AS v. Altimo Holdings & Invs. Ltd, 2008 U.S.Dist LEXIS 23458 (S.D.N.Y. 2008), the court determined arbitrability under the parties' tacit agreement that it do so (id., at 12-13), as supplemented by the finding that the arbitration agreement contained no language "to suggest that the parties clearly and unmistakably intended otherwise" (id.).

8

Local 205, Cmty and Soc. Agency Employees' Union, Dist. Council 1707 AFSCME, AFL-CIO v. Day Care Council of New York, Inc., 992 F.Supp 338 (SDNY 1998), was an LMRA action, implicating a different national arbitration policy than that under the FAA. Under the LMRA, arbitrability is for the court.  See Dooley Main Mem., at 14-15.

In First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938 (1995), one of four "workout" agreements contained the arbitration clause; the Kaplans had not signed that one (id., at 940).  Arbitration was under a Philadelphia Stock Exchange Rule, which, unlike Rule R-7(a), did not "clearly and unmistakably" give arbitrability to the arbitrator, 9 F.3d at 1507 n.5 (3d Cir. 1994).  The general presumption was not overcome, as the Kaplans "did not clearly agree to submit ... arbitrability to the arbitrators," 514 U.S. at 947.  Arbitrability was thus for the court.

In Monisoff v. Am. Eagle Invs, Inc., 927 F.Supp 137 (S.D.N.Y.), aff'd, 1996 U.S. App. LEXIS 31865 (2d Cir 1996), the court did not need to address the "clear and unmistakable" standard.  The plaintiff's agreement was with an entity other than the defendant brokerage, by reason of which the parties could not have agreed "clearly and unmistakably" to arbitrate arbitrability (or any other matter).  Arbitrability was for the court.

In Bensadoun v. Jobe-Riat, 316 F.3d 171 (2d Cir. 2003), the plaintiff sued to prevent arbitration under the NASD Code, objecting that the claimants were not his customers within the meaning of the Code and thus could not arbitrate their claims against him.  The Second Circuit found that triable issues of fact existed as to the "customer" issue.  In Alliance Bernstein, the Second Circuit distinguished Bensadoun from Rule R-7(a) cases, based upon the greater breadth of arbitrability under Rule R-7(a) (445 F.3d at 126).

The Petitioners cite Limonium Maritime, S.A. v. Mizushima Marinera, 1999 U.S.

9

Dist Lexis 20010 (S.D.N.Y. 1999), for its references, irrelevant here, to restrictive language in arbitration provisions in other cases (Reply Mem., at 15). The court found the provision before it broad enough to bind non-signatories. The Petitioners strain to distinguish the case (id., n.8)

F.     **The Condition Precedent Defense Is for the Arbitrator**

Di Martino and Shanks repeat their contention that Margaret may not arbitrate against them as she did not satisfy the condition precedent of involving them in the predicate mediation. Reply Mem., at 21. This is an interpretation of the LTIP Document, a defense on the merits, not a question of arbitrability. See Dooley Main Mem., at 23; Howsam v. Dean Witter Reynolds, Inc., 537 U.S. 79, 84-85 (2002) (quoting the Revised Uniform Arbitration Act of 2000: an "arbitrator shall decide whether a condition precedent to arbitrability has been fulfilled." RUAA § 6(c), and comment 2, 7 U. L. A. 12-13 (Supp. 2002)); Town of Amherst v. Custom Lighting Services, LLC, 2007 U.S. Dist. LEXIS 88296, at 31 (W.D.N.Y. 2007).

## CONCLUSION

For the reasons set forth herein and in her initial papers, Margaret Dooley submits that an order should issue granting her motion, pursuant to 9 U.S.C. § 206, to compel Joseph Di Martino and Eugene B. Shanks, Jr., to arbitrate her claims, including the parties' dispute as to arbitrability, and denying their petition to stay arbitration.

Dated: July 5, 2008

_____
Guy R. Fairstein (GF - 1721)
Attorney for Margaret Dooley, the Respondent
15 Stewart Place - No. 11-J
White Plains, NY 10603
914-328-0923

10

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

JOSEPH Di MARTINO and EUGENE B. SHANKS, Jr.,

                              Petitioners,                    4606 Civ. 2008
           - against -

                                                                            Judge Chin
MARGARET DOOLEY,

                              Respondent.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## AFFIRMATION OF SERVICE

        I, GUY R. FAIRSTEIN, an attorney-at-law duly admitted to practice law in the State of New York, affirm under the penalty of perjury that:

        1.        I am the attorney representing Margaret Dooley, the respondent.

        2.        On July 5, 2008, I delivered to Federal Express, for delivery on Monday, July 7, 2008, to Howard J. Rubin, of Davis & Gilbert LLP, the petitioners' attorneys, at 1740 Broadway, New York, NY 10019, a sealed envelope in a Federal Express mailer containing a copy of the accompanying reply memorandum.

Dated: July 5, 2008

                                                                        _____
                                                                        Guy R. Fairstein  (GF - 1721)
                                                                        Attorney for the Respondent
                                                                        15 Stewart Place  -  No. 11-J
                                                                        White Plains, NY 10603
                                                                        914-328-0923